In re Richard G. **PAOLINO** and Elaine M. Paolino, Debtors.

**Bankruptcy No. 84–00759G.**

United States Bankruptcy Court, E.D. Pennsylvania.

March 19, 1987.

See also, Bkrtcy., 68 B.R. 416.

Kenneth F. Carobus, Morris & Adelman, P.C., Philadelphia, Pa., for petitioning creditors.

Myron Bloom, Adelman Lavine Krasny Gold & Levin, Philadelphia, Pa., for Union Nat. Bank and Trust Co. and Univest Mortg. Co.

Andrew N. Schwartz, Pincus, Verlin, Hahn & Reich, P.C., Philadelphia, Pa., for Richard G. Paolino.

Jeffrey Meyers, Charleston & Fenerty, Philadelphia, Pa., for Elaine M. Paolino.

Michael H. Reed, Pepper, Hamilton & Scheetz, Philadelphia, Pa., for Herbert Brener, Trustee.

## OPINION

BRUCE FOX, Bankruptcy Judge:

Presently pending before me is the application of Morris & Adelman, P.C. (applicant) for allowance of fees and reimbursement of costs.[1] The applicant is counsel for certain petitioning creditors in this involuntary chapter 11 bankruptcy case. A hearing on the application was held on November 5, 1986. Objections have been interposed by Union National Bank and Trust Co., Univest Mortgage Co., the trustee and Dr. Richard G. Paolino (one of the debtors).

The applicant seeks compensation for work done in securing the involuntary order for relief. *See* 11 U.S.C. § 503(b)(3)(A). The order for relief was entered on May 24, 1985. *In re Paolino,* 49 B.R. 834 (Bankr.E.D.Pa.1985). The applicant also seeks compensation for activities after the entry of the order for relief on the grounds that: (1)

its participation in the litigation which resulted in the appointment of a trustee "preserved the estate,"[2] *see* 11 U.S.C. § 503(a)(1)(A); and (2) it otherwise made a "substantial contribution" in this case, *see* 11 U.S.C. § 503(b)(3)(D). The objectors do not oppose reasonable compensation of the applicant for work performed in connection with the entry of the involuntary order for relief. They do object to all other compensation sought.

For the reasons set forth below, I will (1) allow reasonable compensation for work performed in connection with the entry of the involuntary order for relief; (2) allow compensation for a portion of the work performed in connection with the appointment of the trustee; and (3) deny the balance of the request.[3]

### I.

I turn first to the request for compensation for services performed other than those in connection with either the appointment of a trustee or the entry of the involuntary order for relief. The applicant seeks compensation for its work in connection with: (1) certain motions for relief from stay that were filed against the debtor in 1985; (2) a motion which sought turnover to the debtor of certain funds in the hands of the receiver appointed under state law prior to the filing of this bankruptcy case; and (3) "miscellaneous matters."

With respect to these requests, the applicant can prevail only if it has established that the work made a "substantial contribution" in this case. The leading definition of that term is as follows:

> Services which substantially contribute a case are those which foster and enhance, rather than retard or interrupt the progress of reorganization.... Those services which are provided solely for the client-as-creditor, such as those services

---

1. The applicant seeks only a determination allowing compensation at this time and not payment of such allowed compensation.

2. A trustee was appointed over the debtors' objection on October 2, 1985. *See In re Paolino,* 53

B.R. 399 (Bankr.E.D.Pa.1985), *aff'd,* 60 B.R. 828 (E.D.Pa.1986).

3. This opinion constitutes the court's findings of fact and conclusions of law pursuant to Bankr. Rules 9014 and 7052.

rendered in prosecuting a creditor's claim, are not compensable. [Compensable services] are those which facilitated the progress of these cases....

*In re Richton International Corp.*, 15 B.R. 854, 857 (Bankr.S.D.N.Y.1981) (citations omitted); *accord, In re Calumet Realty Co.*, 34 B.R. 922 (Bankr.E.D.Pa.1983). *See also* 3 *Collier on Bankruptcy* ¶ 503.04 (15th ed. 1986). Put another way, services must provide a "demonstrable benefit to the debtor's estate, the creditors, and, to the extent relevant, the stockholders," in order to be compensable. *In re Jensen-Farley Pictures, Inc.*, 47 B.R. 557, 569 (Bankr.D.Utah 1985).

■ The main thrust of the objectors' argument is that the applicant's participation in the various post-order for relief contested matters duplicated the efforts of other parties in interest and therefore, did not contribute substantially, or otherwise, to the outcome of this litigation. I agree.

With respect to the relief from stay motions, the debtors opposed the motion for relief vigorously and were represented by counsel in doing so. Similarly, when debtors and trustee sought turnover, they, too, were represented by competent counsel. In short, the applicant has not articulated or demonstrated how its particular efforts facilitated the progress of the case in the distinct manner contemplated by Congress before compensation may be awarded under 11 U.S.C. § 503(b)(3)(D). *See generally In re J.E. Jennings, Inc.*, 67 B.R. 106, 110 (Bankr.E.D.Pa.1986), *appeal docketed* (E.D.Pa.) (general policy of the Code is to deny compensation unless expressly provided). Moreover, irrespective of the applicant's duplication of the efforts of other parties, I am unable to conclude, at this stage of the case, that the opposition to the relief from stay motions advanced the progress of this case; at a minimum, the application is premature. *See In re Seatrain Lines, Inc.*, 21 B.R. 194, 196 (Bankr. S.D.N.Y.1982).

## II.

The applicant next argues that its services in connection with the appointment of a trustee in this chapter 11 case were necessary to preserve the estate and therefore, constitute a *per se* basis for the award of compensation under 11 U.S.C. § 503(b)(1)(A). While I find it unnecessary to reach the broad issue posed by the applicant, I do find that, in this case, the appointment of a trustee made a substantial contribution to this bankruptcy case under section 503(b)(3)(D).

■ Section 503(b)(3)(D) is derived from sections 242 and 243 of the prior Act, 11 U.S.C. §§ 642, 643 (repealed 1978) and therefore, decisions under the prior Act are relevant in construing this section of the Code. My research reveals at least two Act cases in which courts have approved the compensation of a creditor's attorney for services rendered in procuring the appointment of a receiver. *See Morse & Tyson v. Irving-Pitt Manufacturing Co.*, 18 F.2d 692 (8th Cir.1927); *Lincoln Printing Co. v. Middle West Utilities Co.*, 17 F.Supp. 799 (N.D.Ill.1936). The concerns which would lead a court to appoint a receiver under the Act resemble the reasons a court may appoint a trustee under the Code. *Compare* 1 *Remington on Bankruptcy* §§ 317, 324 (receivers are appointed to preserve assets against deterioration waste or loss) *with In re Humphreys Pest Control Franchises, Inc.*, 40 B.R. 174 (Bankr.E.D.Pa.1984) (trustee appointed under 11 U.S.C. § 1104(a)(2) due to inadequate explanation for large cash transfers from debtor to parent corporation).

■ In this case, the court appointed a trustee due to (1) the debtors' failure to file adequate financial reports to the prepetition receiver and with the court after the entry of the order for relief and (2) the debtors' prepetition fraudulent conduct manifested in a "check kiting" scheme. *In re Paolino*, 53 B.R. at 401–02. While the ultimate outcome of this bankruptcy may still be in doubt, I am satisfied that the appointment of a trustee was a significant event which has contributed to the progress of this case.

It does not automatically follow, however, that the applicant is entitled to be

fully compensated for all of the hours it expended in connection with the appointment of the trustee litigation. It appears that the court's decision to appoint a trustee was based on the evidence and argument made by Union National Bank and was not based on the applicant's efforts.[4] The court did not reach the issues raised by the applicant.

In these circumstances, I conclude it would be inequitable to either grant or deny the application in full. While the applicant's motion and proof was distinct from that of Union National Bank, its legal theory was at least partially related to that of the prevailing motion and the movants were fully successful in the litigation. *See generally Hensley v. Eckerhardt*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). As a result, in the exercise of my discretion, I deem it appropriate to compensate the applicant for 25% of the hours it expended in connection with the appointment of a trustee litigation. Upon review of the application, I find that the applicant reasonably expended 22 hours which will be reduced to 5.5 hours. The objectors have not disputed the applicant's requested hourly rate of $150.00 and I agree that the rate is reasonable in this case. Therefore, I will award the applicant a reasonable attorney's fee of $825.00 for services performed in connection with the appointment of a trustee.

### III.

From January 11, 1985 through May 20, 1985, the applicant claims it expended 52.8 hours of work on the following tasks in connection with the petitioning creditors' efforts to secure an involuntary order for relief: drafting pleadings, conducting discovery, preparing for trial, conducting the trial and preparing post-trial submissions.

The objectors do not challenge the applicant's entitlement to reasonable compensation for this work. However, they assert that the applicant has not adequately documented its application as required by *In re Meade Land and Development Co.*, 527 F.2d 280 (3d Cir.1975). Specifically, they complain that the applicant has improperly "lumped" various services under one unit of time expenditure thereby making it impossible to accurately determine whether the time expended on the particular services was reasonable. *In re Bible Deliverance Evangelistic Church*, 39 B.R. 768 (Bankr.E.D.Pa.1984); *In re Horn & Hardart Baking Co.*, 30 B.R. 938 (Bankr.E.D. Pa.1983); *In re Nation/Ruskin*, 22 B.R. 207 (Bankr.E.D.Pa.1982); *accord, In re WHET, Inc.*, 58 B.R. 278 (Bankr.D.Mass. 1986).

The objectors are correct in asserting that the applicant must comply with the requirements of *Meade Land* and that the applicant is guilty of improper lumping. The time entries for February 28, March 1, 1985, all contain multiple activities which make it impossible to determine the reasonableness of the time expended on compensable work.[5] The same

---

4. Two motions were filed seeking appointment of a trustee. The motion filed by the applicant on behalf of the petitioning creditors sought appointment of a trustee pursuant to 11 U.S.C. § 1104(a)(2). Union National Bank and Trust Co.'s motion was based on section 1104(a)(1). The court appointed the trustee pursuant to section 1104(a)(1). *See In re Paolino*, 53 B.R. at 401–02.

5. The applicant's records show the expenditure of a total of 4.4 hours on February 28 and March 1, 1985 for preparation of the involuntary petition, the motion for appointment of a trustee and a motion for expedited hearing. There is no allocation of the time among the motions. While there may be situations where an applicant might combine closely related activities within a single time entry, this is not such a case. A motion for appointment of a trustee is quite distinct from an involuntary petition and, in fact, in this case, I have found that the applicant's work on the motion partially non-compensable. Therefore, I am not able to accurately determine whether the time expended on the fully compensable service was reasonable. Ordinarily, this lumping would result in the total disallowance of the requested compensation. *E.g., In re Bible Deliverance Evangelistic Church*. In this case, however, due to the relatively minor amount of time involved and the fact that undoubtedly a significant portion of the time is compensable, I have attributed one-half the time requested to the motion for appointment of a trustee and the other one half to the involuntary petition.

defect exists with respect to the entry for April 2, 1985.[6]

Finally, in light of counsel's experience and hourly rate, the applicant's request for compensation for 10.7 hours for preparation of a modest post-trial memorandum of law is excessive and will be reduced to 8 hours. *See Matter of Combined Croft Corp.*, 58 B.R. 819, 822 (Bank. W.D.Wisc.1986); *In re Shades of Beauty, Inc.*, 56 B.R. 946, 950 (Bankr.E.D.N.Y. 1986).[7]

In light of the nature of this case and counsel's success in obtaining the order for relief, I find that the applicant reasonably expended 42.1 hours in connection with the entry of the order for relief. Again using an hourly rate of $150.00, I will award the applicant a reasonable attorney's fee of $6,315.00.

### IV.

The applicant has requested reimbursement of its expenses as follows:

| | |
|---|---|
| Certified copies | $ 90.40 |
| Telephone charges | 23.06 |
| Photocopying | 407.10 |
| Transcripts | 196.75 |
| Filing fees | 100.00 |
| Miscellaneous | 7.61 |
| Total | $824.92 |

The objectors, quite properly, point out that the applicant must be denied reimbursement of expenses attributable to legal services which are not compensable. The applicants have not particularized which expenses are related to the services performed in obtaining the order for relief and which were related to the other activities which I have held non-compensable. For this reason alone, I cannot award the applicant any expenses at this time.

The objectors do not address, more fundamentally, whether any of the categories of claimed expenses are themselves non-compensable. In *In re National Paragon Corp.*, 68 B.R. 337 (Bankr.E.D.Pa.1986), *appeal docketed* (E.D.Pa.), Judge Scholl held that filing fees, deposition and court transcript costs are compensable "necessary expenses" under 11 U.S.C. § 330(a)(2), but that photocopying, postage and telephone charges are overhead and therefore, not compensable expenses. In order to assist the applicant in determining whether it wishes to resubmit an application for those expenses which were related to its compensable activities, I will address whether the various categories of expenses in this application are compensable under section 503(b)(3).[8]

Section 503(b)(3)(A) provides that a creditor filing an involuntary petition under 11 U.S.C. § 303 shall be allowed an administrative expense for "the actual, necessary

---

6. The April 2, 1985 entry states that 2.3 hours were expended on the following:

Filed Answer to Motion for a Protective Order, Counter-Motion to Compel, Motion for Expedited Hearing, conference with Bankruptcy Clerk regarding expedited hearing conference with Judge's Secretary and Judge's Law Clerk, regarding expedited hearing; Hearing on Motion for Protective Order, etc. This entry is garbled and I do not understand precisely what actions the applicant took. I do note that the actual delivery of the motions to the clerk's office is not "legal" work and is not compensable at the attorney's hourly rate. *In re Bible Deliverance Evangelistic Church; In re Global International Airways Corp.*, 38 B.R. 440 (Bankr.W.D.Mo.1984). In addition, the hours apparently expended by the applicant on April 2, 1985 are far in excess of the time reasonably necessary to make arrangements for the scheduling of an expedited hearing. For these reasons, this entry will be disallowed in its entirety.

7. I note also that the applicant requested compensation for 5.7 hours preparation for and attendance at a hearing on March 11, 1985 "on Involuntary Petition." The dockets reflect that the March 11, 1985 hearing related to the motion for appointment of a trustee. These hours will not be fully compensated. *See* Part III, *supra.* Similarly, the applicant will not be fully compensated for 1.5 hours for preparation and attendance at a hearing on March 15, 1985, which also related to the motion for appointment of a trustee.

8. Strictly speaking, it is not necessary for me to reach this issue at this time. However, it is extremely likely that the applicant will resubmit its request for expenses related to the securing of the order for relief. There is little point in requiring the applicant to document its photocopying and telephone expenses if, as a matter of law, these categories of expenses are non-compensable absent extraordinary circumstances.

expenses ... incurred." *See generally* 11 U.S.C. § 330(a)(2) (also allowing reimbursement of professionals and attorneys of "actual, necessary expenses"). In interpreting the language of sections 330 and 503, I begin by recognizing that the Bankruptcy Code represents "a key departure from prior law in the area of compensation and reimbursement of expenses...." 2 Collier on Bankruptcy 330.05, at 330–33 (15th ed. 1986); *see* H.R.Rep. No. 95–595, 95th Cong., 2d Sess. 329, U.S.Code Cong. & Admin.News 1978, p. 5787, 6286. Congress has abandoned the principle of "strict economy" which existed under the prior Act so that bankruptcy specialists, who enable the system to operate efficiently, are not driven into other fields. *See, e.g., In re Nucorp Energy, Inc.,* 764 F.2d 655 (9th Cir. 1985); *In re McCombs,* 751 F.2d 286 (8th Cir.1984); *In re Casco Bay Lines, Inc.,* 25 B.R. 747 (Bankr. 1st Cir.1982); *In re Jensen-Farley Pictures, Inc.,* 47 B.R. at 574–79; *In re Sapolin Paints, Inc.,* 38 B.R. 807 (Bankr.E.D.N.Y. (1984). Therefore, in order to construe section 503(b)(3), it is helpful to examine non-bankruptcy cases involving reimbursement of legal expenses.

In examining the non-bankruptcy cases, it is first necessary to distinguish between the concepts of "costs" and "expenses." The term "costs" is usually used to refer to those items which may be taxed by a prevailing party in a federal court pursuant to 28 U.S.C. § 1920. Most common among the items of costs allowed include fees of the clerk and marshal, deposition and transcript fees and witness fees. *See* Bartell, *Taxation of Costs and Awards of expenses in Federal Court,* 101 F.R.D. 553 (1984) (Bartell).

By comparison, other expenses are often incurred in litigation, sometimes in significant amounts, which are not taxable as costs. "If the case provides no basis for an award of attorney's fees in addition to costs, courts uniformly reject an award of 'expenses' in addition to the statutory costs to a prevailing party." *Id.* at 590, *citing, In re Penn Central Transportation Co.,* 630 F.2d 183, 191 (3d Cir.1980).

There is a division of authority whether expenses other than the statutory costs set forth in 28 U.S.C. § 1920 may be awarded when there is authorization for an award of attorney's fees. *Bartell,* 101 F.R.D. at 591–96. Some courts reason that the concept of a reasonable attorney's fee encompasses "reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client." *Northcross v. Board of Education,* 611 F.2d 624, 639 (6th Cir.1979), *cert. denied,* 447 U.S. 911, 100 S.Ct. 2999, 64 L.Ed.2d 862 (1980); *accord, e.g., In re Fine Paper Antitrust Litigation,* 98 F.R.D. 48, 235–37 (E.D.Pa. 1983), *aff'd in part, rev'd in part on other grounds,* 751 F.2d 562 (3d Cir.1984); *Zeffiro v. First Pennsylvania Bank N.A.,* 574 F.Supp. 443 (E.D.Pa.1983), *aff'd,* 746 F.2d 1469 (3d Cir.1984). *See also Pitchford Scientific Instruments Corp. v. Pepi, Inc.,* 440 F.Supp. 1175 (W.D.Pa.1977) (in allowing prevailing antitrust plaintiff Lexis and other out-of-pocket expenses, court notes that the term "costs of suit" in 15 U.S.C. § 15 encompasses reasonable and necessary expenses of litigation not included in technical concept of "court costs"), *aff'd* 582 F.2d 1275 (3d Cir.1978), *cert. denied,* 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 242 (1979); *Aamco Automatic Transmissions, Inc. v. Tayloe,* 82 F.R.D. 405 (E.D.Pa.1978). Other courts have rejected the argument that the term "reasonable attorney's fee," when authorized by statute, includes the concept of expenses. *Vecchione v. Wohlegemuth,* 481 F.Supp. 776, 799 (E.D.Pa.1979) (under 42 U.S.C. § 1983, 1988, disallowing, *inter alia,* postage and telephone but allowing cost of photocopying); *accord, e.g., Wehr v. Burroughs Corp.,* 477 F.Supp. 1012 (E.D.Pa.1979) (under 29 U.S.C. § 629(b), disallowing all expenses not included in 28 U.S.C. § 1920, including telephone charges and computer research fees), *aff'd in part and rev'd in part,* 619 F.2d 276 (3d Cir.1980) (allowing computer research fees).

Not surprisingly, bankruptcy courts are divided on the question whether items such as photocopying and telephone charges may be reimbursed under 11 U.S.C. §§ 330, 503. *Compare, e.g., In re Pacific Express,*

*Inc,* 56 B.R. 859, 866 (Bankr.E.D.Cal.1985) (reasonable long distance telephone expenses allowed); *In re American International Airways, Inc.,* 47 B.R. 716, 725 (Bankr.E.D.Pa.1985) (photocopying expenses and telephone charges allowed); *In re Jensen-Farley Pictures, Inc.,* 47 B.R. at 585–85 (photocopying and postage expenses allowed); *In re Four Star Terminals, Inc.,* 42 B.R. 419, 426–27 n. 1 (Bankr. D.Alaska 1984) (photocopying and postage expenses allowed); *In re Southern Industrial Banking Corp.,* 41 B.R. 606, 615 (Bankr.E.D.Tenn.1984) (telephone charges allowed); *Matter of Liberal Market, Inc.,* 24 B.R. 653, 662 (Bankr.S.D.Ohio 1982) (photocopying, postage and telephone expenses allowed) *with, e.g., In re National Paragon Corp.,* 68 B.R. at 340–43 (photocopying, postage and telephone expenses disallowed); *In re Pacific Express, Inc.,* 56 B.R. at 866 (photocopying and postage expenses disallowed); *In re Nashville Union Stockyard Restaurant,* 54 B.R. 391, 396 (Bankr.M.D.Tenn.1985) (photocopying disallowed); *In re Interstate United Electronic Sales Co.,* 44 B.R. 784, 786 (Bankr.S.D.Fla. 1984) (photocopying and postage expenses disallowed); *In re Southern Industrial Banking Corp.,* 41 B.R. at 615 (photocopying expenses disallowed).

After considering the conflicting authorities, I conclude that photocopying and long distance telephone charges are reimbursable expenses under 11 U.S.C. § 503(b)(3). In reaching this conclusion, I am greatly influenced by the rationale articulated by the "fund in court" or "common fund" cases. In such cases, where a party creates, increases or preserves a fund which benefits a class of persons, the

> [F]ederal courts have long recognized "the historic power of equity to permit the trustee of a fund or property, or a party preserving or recovering a fund for the benefit of others in addition to himself, to recover his costs, including his attorney's fees, from the fund or property itself or from the other parties enjoying the benefit."

*Lindy Brothers Builders, Inc. v. American Radiator & Standard Sanitary Corp.,* 540 F.2d 102, 110 (3d Cir.1976) (*Lin-*

*dy), quoting Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 257, 95 S.Ct. 1612, 1621, 44 L.Ed.2d 141 (1975) *and citing Trustees v. Greenough,* 105 U.S. 527, 15 Otto 527, 26 L.Ed. 1157 (1881). *See also* Report of the Third Circuit Task Force, *Court Awarded Attorney's Fees,* 108 F.R.D. 237, 250–51 (1985) (Task Force); H. Newberg, *Attorney Fee Awards* § 2.01 (1986) (Newberg). The doctrine is rooted in principles of quantum meruit and unjust enrichment. *Lindy,* 540 F.2d at 110; *see* Newberg § 2.10 at 28.

Bankruptcy cases share two characteristics of common fund cases. First, in both kinds of cases, parties often seek fees and expenses from a limited fund on the basis of work which purportedly has contributed to a successful result for various parties in interest. Second, "the adversarial process is often diminished or absent, and hence the need for 'judicial scrutiny' is heightened." *In re Shaffer-Gordon Associates, Inc.,* 68 B.R. 344, 348 (Bankr.E.D.Pa.1986), *citing* Task Force, 108 F.R.D. at 351. For these reasons, and because Congress intended to put bankruptcy practitioners on an equal footing with other attorneys, I conclude that "fund-in-court" cases provide the best guidance in determining whether particular types of litigation expenses are reimbursable in bankruptcy.

My research reveals that federal courts in this circuit have allowed reimbursement of photocopying and long distance telephone expenses in "fund-in-court" cases. *See In re Fine Paper Antitrust Litigation; Zeffiro v. First Pennsylvania Bank N.A.; accord, In re Agent Orange Product Liability Litigation,* 611 F.Supp. 1296, 1322 (E.D.N.Y.1985); Newberg § 2.19 & authorities cited therein.

The result in the "fund-in-court" cases is buttressed by the statutory text of the Bankruptcy Code which refers to reimbursement of "necessary expenses." 11 U.S.C. §§ 330(a)(2), 503(b)(3). Those decisions which have restricted the scope of allowable expenses appear to treat the term synonymously with "costs" which are taxable under 28 U.S.C. § 1920. I believe that by employing the term "expenses,"

Congress intended that the courts accord the term a broader construction.[9]

 For these reasons, the applicant may wish to submit an amended application for reimbursement of those allowable expenses [10] which are attributable to its compensable services. *See In re American International Airways, Inc.,* 47 B.R. at 725. An order consistent with this opinion shall be entered.

---

9. Some courts have concluded that items such as photocopying, postage and long distance telephone are not reimbursable because they are part of an attorney's overhead. As one court has stated,

> Overhead ... includes all continuous administrative or general costs or expenses incident to the operation of the firm which cannot be attributed to a particular client or case. The term is not definable with exact precision, but may be exemplified by such items as rent, taxes, insurance, lighting, hearing, and other office expenses, including secretarial services.

*In re Jensen-Farley Pictures, Inc.,* 47 B.R. at 584. While the question may be subject to some dispute, I believe that expenses such as photocopying and long distance telephone are commonly attributed to and billed to individual clients by many firms, a practice which is reasonable in a complex case involving numerous parties (as is often the case in a bankruptcy proceeding).

10. I have not separately discussed the request for reimbursement of the costs of certified copies, transcripts and filing fees. Those expenses are clearly reimbursable. No reimbursement, however, will be allowed for any item denoted "miscellaneous."