In re K–FAB, INC., Debtor.

In re Martin F. KOCH and Linda Koch, i/t/a Koch Leasing, Debtors.

Bankruptcy Nos. 5–87–00063, 5–87–00064.

United States Bankruptcy Court, M.D. Pennsylvania.

Aug. 28, 1990.

Donald P. Fedderly, Long Valley, N.J., for Machine Tool Finance Corp.

Peter J. Hoegen, Jr., Wilkes–Barre, Pa., for K–Fab, Inc.

Robert C. Nowalis, Wilkes–Barre, Pa., for Creditors' Committee.

## OPINION AND ORDER

THOMAS C. GIBBONS, Bankruptcy Judge:

Before the Court is an application for attorneys' fees and costs filed by the law firm of Fedderly & Shaw, attorneys for Machine Tool Finance Corporation, f/k/a Middlesex Leasing Company (hereinafter "Fedderly"). The application requests fees totalling $11,977.10. Fedderly considers the fees to be of two types with the first being incurred in the period between April 6, 1987 through and including September 27, 1988. Fedderly argues that these fees should be permitted pursuant to an equipment lease entered into between Machine Tool and the debtor and that the fees were incurred in Machine Tool's efforts to protect its interest as an individual creditor in this bankruptcy. In particular, most of the fees incurred during this time related to an adversary proceeding filed by Machine Tool seeking to render void a purchase option for certain machinery subject to the lease.

Additional attorneys fees were incurred from September 27, 1988 through the date of hearing on this application. Fedderly argues that in September of 1988, Machine Tool became suspicious of not only the protection of its security interest, but also the debtors' true intentions concerning its bankruptcy and its ability to reorganize. Consequently, Machine Tool was "forced to incur additional fees and costs in determining and monitoring the debtors' financial condition." See Application at page 3. Among the activities conducted by Machine Tool were a rule 2004 Examination and

objections to the debtors' Disclosure Statements and Plans. Fedderly relies upon §§ 506(b), 503(b)(3)(D) and 503(b)(4) to support the application for attorneys fees.

The application is met by objections of both the Official Creditors' Committee and the debtors. The Creditors' Committee objects that the fees requested are not fair, reasonable or just under the circumstances and further that the debtors have already paid Machine Tool sums which should be offset against any claim for attorneys fees. Before proceeding further, we must note that the evidence submitted to support a claim to an offset was inconclusive.

Strong opposition was filed by the debtors who argue that all actions taken on behalf of Machine Tool were done so for the sole purpose of delaying and obstructing the administration of this bankruptcy case.

■ Fedderly relies on § 506(b) to support payment of all the fees incurred prior to September of 1988. Section 506(b) provides as follows:

(b) To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.

The objectors claim that most of the efforts made by Machine Tool during this period were only to protect its individual rights as a creditor and to further delay and hinder all reorganization efforts made by the debtor. "The controlling inquiry is whether, considering all relevant factors including duplication, the creditor reasonably believed that the services employed were necessary to protect his interest in the debtors' property." *In re Wonder Corporation of America*, 72 B.R. 580, 587 (Bankr.D.Conn.1987) citing *In re United Merchants & Mfrs., Inc.*, 674 F.2d 134, 140 (2nd Cir.1982). Additionally, we must consider the extent, if any, of the equity in the machinery subject to the lease because that "element is a underlying factor in the determination of the extent to which their legal services and costs are reasonable under § 506(b)." See *In re Wonder Corporation of America, supra*, at 589. Several times during the course of this proceeding and in the plan of reorganization the parties have conceded that Machine Tool is oversecured. But, however, under prolonged questioning at the time of the hearing, counsel requesting fees asserted that at no time was he aware of the actual fair market value of the machinery which was subject to the original lease agreement between the parties. Without any reliable determination as to the value of the machinery, there is no way to determine whether there is equity in order to permit payment of fees to the secured creditor pursuant to the Code. Consequently, no fees will be granted to Fedderly for services performed prior to September 1988.

Fedderly filed a request for fees approximating $7,400 for the period from September of 1988 through the present and relies on § 503(b)(3)(D) and (b)(4) to support this claim. Section 503(b)(3)(D) and (b)(4) provide as follows:

§ 503. **Allowance of administrative expenses.**

\* \* \* \* \* \*

(b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including

\* \* \* \* \* \*

(3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by

\* \* \* \* \* \*

(D) a creditor, an indenture trustee, an equity security holder, or committee representing creditors or equity security holders other than a committee appointed under section 1102 of this title, in making a substantial contribution in a case under chapter 9 or 11 of this title; or

\* \* \* \* \* \*

(b)(4) reasonable compensation for professional servis rendered by an attorney or an accountant of an entity whose expense is allowable under paragraph (3) of this subsection, based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title, and reimbursement for actual, necessary expenses incurred by such attorney or account;

\* \* \* \* \* \*

Fedderly asserts that in September of 1988 Machine Tool became alarmed "about the status of its security with debtors, as well as debtors' true intentions concerning their bankruptcy and their ability to reorganize." See Fedderly's Application at page 2. During this time, Machine Tool, inter alia, conducted a rule 2004 Examination and other activities including a review of and objection to the Disclosure Statements and Plans. Objectors respond by asserting that these activities were a "blatant and totally unproductive obstruction in the administration of the case."

The Bankruptcy Court in *In re Paolino,* 71 B.R. 576, 579 (Bankr.E.D.Pa.1987) wrote the following concerning requests for compensation under § 503(b)(3)(D):

"... the applicant can prevail only if it has established that the work made a 'substantial contribution' in this case. The leading definition of that term is as follows:

Services which substantially contribute to a case are those which foster and enhance, rather than retard or interrupt the progress of reorganization.... Those services which are provided solely for the client-as-creditor, such as those services rendered in prosecuting a creditor's claim, are not compensable. [Compensable services] are those which facilitated the progress of these cases....

*In re Richton International Corp,* 15 B.R. 854, 847 (Bankr.S.D.N.Y.1981) (citations omitted); *accord, In re Calumet Realty Co.,* 34 B.R. 922 (Bankr.E.D.Pa. 1983) *See also 3 Collier on Bankruptcy,* ¶ 503.04 (15th ed. 1986). Put another way, services must provide a 'demonstra-ble benefit to the debtor's estate, the creditors, and, to the extent relevant, the stockholders,' in order to be compensable. *In re Jensen–Farley Pictures, Inc.,* 47 B.R. 557, 569 (Bankr.D.Utah 1985)."

We have examined the application and the testimony submitted into evidence and have concluded that many of the activities conducted by Machine Tool did benefit the estate and all creditors. We do, however, note that many of the fees incurred could have been averted or, at least would not have been incurred if Machine Tool had conducted its investigations with the knowledge of and in conjunction with the Creditors' Committee. Both the head of the Creditors' Committee and the attorney representing Machine Tool testified that neither had contact with each other. On the other hand, a review of the Disclosure Statement and Plan of Reorganization by Machine Tool were for the general benefit of all creditors and the estate. Additionally, serious and substantial concerns were raised by Machine Tool concerning the theft of certain assets of the debtors and a corresponding loss in business. This investigation benefited all concerned parties.

Fee determination cannot be a fixed rate times a number of hours, but rather must be a consideration of the overall fairness and reasonableness of the fee under all of the circumstances. *Lund v. Affleck,* 587 F.2d 75 (1st Cir.1978). *In re Penn–Dixie,* 18 B.R. 834 (Bankr.S.D.N.Y.1982) and *Matter of Nicfur–Cruz Realty Corp.,* 50 B.R. 162 (Bankr.S.D.N.Y.). Consequently, after a review of the testimony and written documentation submitted into evidence at time of hearing and after review of the application for fees and the objections, we find that it would be inequitable to either grant or deny Fedderly's application in full. The objectors have not disputed Fedderly's hourly rate of $100.00 per hour which rate is reasonable under the circumstances of this case. The award for reasonable attorneys' fees and costs will be granted in a total amount of $4,500.00.